# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

EDWARD LOZANSKY, *et al.*,

    Plaintiffs,

     v.

BARACK HUSSEIN OBAMA, President of
the United States,

    Defendant.

**Civil Action No. 11-737 (CKK)**

## MEMORANDUM OPINION
(January 26, 2012)

Plaintiffs Edward Lozansky and Anthony T. Salvia filed suit against the President of the

United States, seeking a declaratory judgment and writ of mandamus forcing the President to

remove the trade restrictions the Jackson-Vanik amendment purportedly places on trade with the

Russian Federation.  The President filed a [7] Motion to Dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(1) and 12(b)(6).  Defendant's motion contends this Court lacks

jurisdiction over the Complaint because there is no waiver of sovereign immunity, the Plaintiffs

lack standing, and the Plaintiffs have failed to satisfy the requirements for mandamus

jurisdiction.  The President further argues that the Plaintiffs have failed to state a claim upon

which relief can be granted because the President acted properly under the Jackson-Vanik

amendment.[1]  The motion is now fully briefed.[2]  For the reasons stated below, the Court finds the

---

[1] Defendant also raises the political question doctrine in a footnote of his brief.  Defs.'
Mot. at 21, n.12.  The Court does not address an argument Defendant does not deem meritorious
enough to include in the body of his motion.

[2] *See* [8] Pls.' Opp'n; [9] Def.'s Reply.

issue of standing is dispositive.  Therefore Court does not reach the issues of sovereign immunity

or the merits of the President's actions.  The Court will address mandamus jurisdiction as a

component of the issue of standing.  Because Plaintiffs failed to show their purported injuries

could be redressed by a favorable decision from this Court or fall within the zone of interests of

the Jackson Vanik amendment, Plaintiffs lack standing to pursue the claims alleged in the

Complaint and Defendant's Motion to Dismiss is GRANTED.

## I. BACKGROUND

A.    *Statutory Framework*

Title IV of the Trade Act of 1974, 19 U.S.C. § 2431 *et seq.*, provides a mechanism by

which the President can establish "nondiscriminatory" or "normal trade relations" with any

country "the products of which were not eligible for the rates set forth in rate column numbered

1 of the Tariff Schedules of the United States on January 3, 1975."  In other words, the Act

continues to deny nondiscriminatory treatment to the products of countries who did not

previously receive nondiscriminatory treatment, unless the country meets the requirements of

section 402 of the Act.  Section 402, known as the Jackson-Vanik amendment, provides in part

> To assure the continued dedication of the United States to fundamental human
> rights, and notwithstanding any other provision of law, on or after the January 3,
> 1975, products from any nonmarket economy country shall not be eligible to
> receive nondiscriminatory treatment (normal trade relations), such country shall
> not participate in any program of the Government of the United States which
> extends credits or credit guarantees or investment guarantees, directly or
> indirectly, and the President of the United States shall not conclude any
> commercial agreement with any such country, during the period beginning with
> the date on which the President determines that such country--
>
> > (1) denies its citizens the right or opportunity to emigrate;

(2) imposes more than a nominal tax on emigration or on the visas or other documents required for emigration, for any purpose or cause whatsoever; or

(3) imposes more than a nominal tax, levy, fine, fee, or other charge on any citizen as a consequence of the desire of such citizen to emigrate to the country of his choice,

and ending on the date on which the President determines that such country is no longer in violation of paragraph (1), (2), or (3).

§ 2432(a).[3]  These requirements apply only to countries whose products were not eligible for rate column 1 as of January 3, 1975 ("covered countries").  § 2432(e).

The President may extend normal trade relations and the other benefits of section 402(a) to covered countries through two mechanisms outlined in sections 402(b) and 402(c).  Section 402(b) provides that covered countries can obtain those benefits if the President first submits a report to Congress indicating that the country is not in violation of subsection (a).  § 2432(b). The President must continue to submit semi-annual reports to Congress so long as the country continues to receive nondiscriminatory treatment.  *Id.*  As an alternative, under Section 402(c), the President can waive the emigration requirements of the Jackson-Vanik amendment if the President provides a report to Congress indicating the waiver "will substantially promote the objectives of this section," and that the country's practices "will henceforth lead substantially to the achievement of the objectives of this section."  § 2432(c)(2)(A)-(B).  The President can extend the waiver for successive 12 month periods.  § 2432(d).

Once a covered country has received either a waiver or compliance determination under the amendment, the President can extend nondiscriminatory treatment, that is, normal trade

---

[3] Unless otherwise noted, all section citations are to Title 19 of the United States Code.

relations, via a bilateral commercial agreement.  *See* § 2434.  The bilateral commercial

agreement must meet certain criteria and must be approved by a joint resolution of Congress.  §

2435.  The agreement must be renewed at least every three years.  § 2435(b)(1).  However,

Congress can overturn the compliance determination or waiver by the President by passing a

joint resolution.  *Id.*  The statute does not otherwise speak to the President's authority to

terminate the application the Jackson-Vanik amendment to a particular covered country.

Defendant alleges, and Plaintiffs do not dispute, that in every case in which application of the

amendment has been terminated, it has been effected by an act of Congress.  *See* Def.'s Mot. at

8, n.6.

     B.    *Trade Relations with the Russian Federation*

     On January 3, 1975, the Soviet Union was not subject to rate column 1, and thus was

subject to requirements of the Jackson-Vanik amendment.  S. Rep. No. 93-1298, at 141-42,

*reprinted in* 1974 U.S.C.C.A.N. 7186, 7338.  Defendant alleges and Plaintiffs do not dispute that

the practice of the President has been to treat the successor countries of the Soviet Union,

including the Russian Federation, as subject to the requirements of Title IV, including the

Jackson-Vanik amendment.  Def.'s Mot. at 1, 7.  On April 16, 1992, President George H. W.

Bush issued an Executive Order under sections 402(c)(2) and (d) waiving the application of the

amendment to the Russian Federation.  Exec. Order 12802, 57 Fed. Reg. 14321 (April 16, 1992).

The United States subsequently entered into a bilateral commercial agreement with the Russian

Federation.  Agreement on Trade Relations Between the United States and The Union of Soviet

Socialist Republics, U.S.-U.S.S.R., June 1, 1990, State Dep't No. 92-168.[4]  Although the

agreement was initially signed with the Soviet Union, it was not brought into force until 1992

with the Russian Federation.  *See Id.*, 1992 WL 466079, at *10 (exchange of letters bringing

agreement into force on June 17, 1992).

Two years later, President William Clinton determined the Russian Federation was in full

compliance with the requirements of the Jackson-Vanik amendment under section 402(b).

Presidential Determination No. 94-51, 59 Fed. Reg. 49783 (Sept. 21, 1994).  Since 1994, the

President (or his delegee) has submitted semi-annual reports to Congress as required by section

402(b), facing virtually no opposition from Congress.  William H. Cooper, Cong. Research

Serv.,  RS21123, Permanent Normal Trade Relations (PNTR) Status for Russia and U.S.-Russian

Econ. Ties 2 (2010).  Thus the Russian Federation has enjoyed normal trade relations with the

United States since 1992, though the country does not have *permanent* normal trade relations

with the United States.

C.      *Plaintiffs*

Plaintiff Lozansky is a citizen of the District of Columbia and President of the American

University in Moscow.  Compl. ¶ 1.  Lozansky also organizes the World Russia Forum, and

other seminars, forums, and programs for businesses relating to trade between the United States

and the Russian Federation.  *Id.*  Plaintiff Salvia describes himself as an expert on American

policy towards the Russian Federation, and assists Lozansky with his seminars and other

activities.  *Id.*

_____

[4] Congress approved the agreement on December 9, 1991.  Joint Resolution Approving
the Extension of Nondiscriminatory Treatment with Respect to the Products of the Union of
Soviet Socialist Republics, Pub. L. No. 102-197, 105 Stat. 1622 (1991).

## II.  LEGAL STANDARD

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction.  In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).  "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).  In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the Plaintiffs' burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).  "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

## III.  DISCUSSION

Plaintiffs' Complaint contends that the Russian Federation is wrongly subjected to the Jackson-Vanik amendment, and that the President has not only the authority, but the non-discretionary duty to permanently "graduate" the Russian Federation from compliance with the amendment's requirements.  To remedy this perceived error, Plaintiffs seek a declaratory

6

judgment from the Court stating the Russian Federation is no longer subject to the Jackson-Vanik amendment, and a writ of mandamus compelling the President to take action to permanently remove the Russian Federation as a covered country under the amendment. Defendant's motion argues that the Complaint is defective for a number of reasons: (1) Plaintiffs fail to identify a waiver of sovereign immunity that would authorize a suit against the President; (2) Plaintiffs lack standing to challenge the application of the amendment to the Russian Federation; (3) Plaintiffs fail to satisfy the requirements for mandamus jurisdiction; and (4) the Complaint fails to state a claim upon which relief can be granted because the President has acted properly under the amendment.  For the reasons stated below, the Court finds that Plaintiffs have failed to allege facts sufficient to establish their standing to pursue their claims for a number of reasons, including that the Plaintiffs have failed to show the Court has jurisdiction to issue a writ of mandamus.  Therefore Defendant's motion will be granted.

"Article III of the Constitution restricts the federal courts to deciding only 'actual, ongoing controversies,' and a federal court has no 'power to render advisory opinions [or] ... decide questions that cannot affect the rights of litigants in the case before them.'" *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (internal citations and quotations omitted).  The case or controversy requirement "means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks omitted).  Standing is a "'threshold jurisdictional question' that cannot be assumed in resolving litigation." *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)).  "[S]tanding to sue under a

statute ordinarily includes both constitutional and prudential components." *Equal Rights Ctr. v. Post Properties, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011).  Defendant argues that the Plaintiffs have failed to allege facts showing they have either constitutional or prudential standing to sue. Plaintiffs concede they lack constitutional standing to bring their declaratory judgment claim, and the Court finds the Plaintiffs lack constitutional and prudential standing to seek a writ of mandamus in this case.

> A.    *Constitutional Standing*

To establish constitutional standing, Plaintiffs  must first show that they have suffered an "injury in fact," that is, the violation of a legally protected interest that is "(a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotations omitted).  Second, "there must be a causal connection between the injury and the conduct complained of." *Id.*  Third, it must be "likely" that the injury would be "redressed by a favorable decision." *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  Defendant alleges Plaintiffs lack constitutional standing because (1) they failed to allege a concrete and particularized injury; and (2) Plaintiffs' purported injury cannot be redressed by the relief requested from the Court. Although Plaintiff Lozansky, but not Plaintiff Salvia, has sufficiently alleged a concrete and particularized injury to avoid dismissal at this stage of the litigation, Plaintiffs fail to show the relief requested from the Court would redress Lozansky's injuries, and thus do not have constitutional standing to pursue the claims.

> 1.    <u>Concrete and Particularized Injury</u>

Defendant initially argues that the Plaintiffs failed to include in the Complaint any

allegations that they have suffered a concrete and particularized injury.  Plaintiffs counter that

the Complaint alleges that Plaintiff Lozansky's financial interests in the World Russia Forum are

hurt by the continued instability in trade relations between the United States and Russia.  The

Complaint alleges that the "continued treatment of the Russian Federation as subject to Jackson-

Vanik, stifles trade between the United States and the Russian Federation and adversely effects

[sic] the level of participation and interest in Lozansky's programs which [Lozansky] sponsors to

promote such trade."  Compl. ¶ 1.  Furthermore, the Plaintiffs assert that

> Because no one can know from one year to the next whether the Defendant will
> grant the Russian Federation a waiver from Jackson-Vanik, businesses are less
> inclined to make long term plans and commitments and hence have a reduced
> interest in attending Lozansky's seminars, forums, and related programs, all to
> Lozansky's detriment.

*Id*.

"At the pleading stage, general factual allegations of injury resulting from the defendant's

conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace

those specific facts that are necessary to support the claim.'"  *Lujan*, 504 U.S. at 561 (quoting

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).  Plaintiffs allege that the current

treatment of Russia under the Jackson-Vanik amendment reduces interest in the World Russia

Forum and other programs organized by Plaintiff Lozansky, reducing Lozansky's income from

those activities.  Though the Defendant may doubt the validity of Lozansky's purported injury,

in no small part because Congress has *never* rejected the President's compliance determination,

the Court must take Lozansky's allegations as true at this point in the proceedings.  The Court

agrees that such allegations "might be applicable to any person having ties to both the United

States and the Russian Federation," but Plaintiff Lozansky's allegations are sufficiently

particularized, although not overwhelmingly so, such as to satisfy the first requirement for standing in the face of a motion to dismiss.

However, Plaintiffs fail to allege that Plaintiff Salvia suffers any concrete or particularized injury. In contrast to class action lawsuits, in cases such as this "[a]ll plaintiffs must demonstrate an actual or threatened injury caused by the allegedly illegal conduct of the defendant which can be fairly traced to the challenged action, and which is likely to be redressed by a favorable decision." *Glass Packaging Inst. v. Regan*, 737 F.2d 1083, 1087 (D.C. Cir. 1984). Moreover, to the extent Salvia could claim an injury similar to Lozansky's, as explained below, that injury could not be redressed by the relief requested from the Court, and Salvia would still lack standing to proceed. With no identifiable injury, Salvia lacks constitutional standing and Defendant's motion will be granted as to Plaintiff Salvia.

        2.   Redressability

Defendant argues that Plaintiffs[5] fail to establish standing because the requested relief would not redress Lozansky's purported injury. In order to satisfy the redressability requirement, the Plaintiffs must show that "if the court affords the relief requested, the [injury] will be removed." *Warth v. Seldin*, 422 U.S. 490, 504 (1975). "The indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights. But it may make it substantially more difficult to meet the minimum requirement of [Article III]." *Id.* at 505 (citations omitted). Plaintiffs' only response is to say that "[i]f this court granted the relief sought, the Russian Federation would be graduated permanently from Jackson-Vanik trade

---

     [5] Although the Plaintiffs do not contest Plaintiff Salvia's lack of standing, and admittedly only Plaintiff Lozansky sufficiently alleges a concrete and particularized injury, for the sake of clarity the Court refers to both Plaintiffs in the remainder of the standing analysis.

restrictions and would no longer be subject to the vagaries of annual congressional action or inaction." Pls.' Opp'n at 11.

The Complaint requests two forms of relief: (1) a declaratory judgment that "the provisions of Section 402 of the Trade Act of 1974 (the Jackson-Vanik Amendment), do not apply to the Russian Federation"; and (2) a writ of mandamus instructing the President to "execut[e] an appropriate finding, proclamation, or other Executive Order [incorporating previous findings] such that [the Russian Federation] should not henceforth be subject to the trade restrictions of Jackson-Vanik in any way." Compl. p. 9. In terms of Plaintiffs' request for a declaratory judgment, Defendant argues that "[n]o declaratory judgment could achieve any more permanent trade status for the Russian Federation than the current status." Defs.' Mot. at 17. Plaintiffs fail to respond to this argument in their Opposition. "[I]t is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004). Given that Plaintiffs have conceded that a declaratory judgment cannot redress their asserted injuries, Plaintiffs lack standing to seek a declaratory judgment.

In response to Plaintiffs' request for a writ of mandamus, Defendant argues that the end result sought by Plaintiffs can only be achieved by an act of Congress. In the introduction to their Opposition, Plaintiffs emphatically argue that "*nowhere in its argument to the Court does DOJ restate the claim that Congressional action is necessary to "graduate" Russia permanently from Jackson-Vanik.*" Pls.' Opp'n at 5 (emphasis in original). Plaintiffs apparently overlooked

pages 17 and 18 of Defendant's motion which detail why, in Defendant's view, Congressional action is required to redress Lozansky's alleged injury.  Plaintiffs' only substantive response is to state that although historically countries have only been removed from Jackson-Vanik by acts of Congress, there is nothing in the statute that requires Congressional action.  Ultimately the Court need not decide whether the President or Congress has authority to remove countries from the auspices of the Jackson-Vanik amendment because Plaintiffs fail to demonstrate that a writ of mandamus is available in this case.

Assuming *arguendo* that Plaintiffs are correct and the President has the authority to permanently remove the Russian Federation from the scope of the Jackson-Vanik amendment, Plaintiffs still lack standing because the Court cannot issue the requested writ of mandamus, and thus cannot redress the injury Plaintiff Lozansky alleges.  *See Swan v. Clinton*, 100 F.3d 973, 976-77 (D.C. Cir. 1996).  The Court doubts it can issue a writ of mandamus compelling the President to act.  *Id.* at 978-79; *see also Franklin v. Massachusetts*, 505 U.S. 788, 802 (1992) (plurality opinion) ("[G]rant of injunctive relief against the President himself is extraordinary and should . . . raise[] judicial eyebrows.").  In any case, mandamus is only available if Plaintiffs "ha[ve] exhausted all other avenues of relief and only if the defendant owes [them] a clear nondiscretionary duty."  *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).  In this case, Plaintiffs have failed to show the President has a nondiscretionary or "ministerial" duty to "graduate" the Russian Federation from the Jackson-Vanik amendment as the requested writ would purport to require the President to do.

The text of the statute provides only two mechanisms for the President to relieve any covered country of the requirements found in section 402(a): determination of compliance

(section 402(b)) and waiver (sections 402(c), (d)).  Neither of these paths are mandatory.

Subsection (b) does not *require* the President to issue a report to Congress indicating compliance

with subsection (a).  Nor does subsection (c) *require* the President to waive application of

subsection (a).  The remainder of the relevant portions of the Act address the terms for bilateral

commercial agreements, but are silent as to any discretion much less obligation on the

President's part to remove covered countries from the scope of the amendment.  Plaintiffs

repeatedly assert that since the President (and his predecessors) has made the determination of

compliance permitted under section 402(b), the President now has a ministerial duty to

"graduate" the Russian Federation from the Jackson-Vanik amendment.  Pls.' Opp'n at 13.

Nowhere in the Complaint or Plaintiffs' Opposition do Plaintiffs identify the source of the

President's purported ministerial duty to issue an Executive Order "incorporating the previous

determinations made by two sitting Presidents."  There is no basis from which the Court can

conclude that the President has a *mandatory* duty to take a step Plaintiffs believe, without any

apparent textual or other support, is *implied* in the Act, particularly when the Executive branch

steadfastly denies it has any authority to take the step requested by Plaintiffs.  Even if the Court

could issue a writ of mandamus against the President, there is no ministerial act the Court could

order the President to take, and thus the writ would fail to redress Lozansky's injuries.

      B.     *Prudential Standing*

      Prudential standing requires that Lozansky's alleged injuries "must arguably fall within

the zone of interests protected or regulated by the statutory provision."  *Bennett v. Spear*, 520

U.S. 154, 162 (1997).  This requirement excludes only those whose interests are "so marginally

related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be

assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388,

399 (1987). "[T]he injury that supplies constitutional standing must be the same as the injury

within the requisite 'zone of interests' for purposes of prudential standing." *Mountain States*

*Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).

Defendant argues Lozansky's purported injuries do not arguably fall within the "zone of

interests" protected by the statute because Jackson-Vanik amendment was intended to encourage

free emigration, and Lozansky's business interests clearly do not.  For his part, Plaintiffs do not

dispute the purposes of the amendment, but instead contend that Lozansky does not need to be a

member of the group Congress sought to protect in order to fall within the statute's zone of

interest.  According to Plaintiffs, "the continued application of Jackson-Vanik to the Russian

Federation is detrimental to Plaintiff Lozansky, an American doing business relating to trade

between the United States and the Russian Federation."  Pls.' Opp'n at 12.

Plaintiffs are correct that they do not have to show that the Jackson-Vanik amendment

"was meant to benefit those in [Lozansky's] situation." *Patchak v. Salazar*, 632 F.3d 702, 705

(D.C. Cir. 2011).  However, the Court's analysis must still focus on "who in practice can be

expected to police the interests that the statute protects." *Id.* (quoting *Mova Pharm. Corp. v.*

*Shalala*, 140 F.3d 1060, 1075 (D.C. Cir. 1998)).  By conditioning normal trade relations on free

emigration, the text of the Jackson-Vanik amendment seeks to promote free emigration from

non-market economies.  *See* § 2432(a).  The Senate Report confirms this goal: "[t]he Committee

hopes that [section 402] will provide an incentive to the Soviet Union and other countries to

discontinue restrictive emigration practices in the interest of developing economic relations with

the United States."  S. Rep. 93-1298 at 142.  It strains credulity to believe that Congress

14

expected organizers of trade conferences—whose interests are allegedly hampered by the amendment according to the Complaint—to police the emigration rights protected by the amendment.

The Court of Appeals reached a similar conclusion in *Sierra Club v. EPA*, 292 F.3d 895 (D.C. Cir. 2002).  In *Sierra Club*, a trade association representing firms that provided environmental technology sought to challenge a regulation governing the classification of waste under the Resource Conservation and Recovery Act.  *Id.* at 896.  The trade association argued that it had standing to challenge the regulation because classifying more waste as hazardous would improve business opportunities for its members.  *Id.* at 903.  The Court of Appeals held the trade association lacked prudential standing because the group failed to show "that [] Congress intended the RCRA to protect interests of its sort, either directly or as a proxy for the environmental interests of the public for whose protection the Act was presumably passed."  *Id.*

Likewise here, Plaintiffs have not, and simply cannot argue that Congress intended to protect business and trade interests with the Jackson-Vanik amendment.  To the contrary, the amendment prioritizes emigration rights over the interests of businesses seeking to trade with Russia, and ancillary organizations like Lozansky's promoting United States-Russian Federation trade in favor of promoting emigration rights.  That there is no private right of action under the statute only reinforces the Court's conclusion that Plaintiff Lozansky lacks prudential standing. *Am. Fed'n of Gov't Emp., AFL-CIO v. Rumsfeld*, 321 F.3d 139, 144-45 (D.C. Cir. 2003).  With no interests even arguably within the zone of interests protected by the Jackson-Vanik amendment, Plaintiffs lack standing, and the Court lacks jurisdiction to adjudicate the Complaint.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs have failed to establish the Court has subject matter jurisdiction over the Complaint.  Plaintiffs fail to allege that Plaintiff Salvia suffers any injury sufficient to show constitutional standing to pursue the claims in this case.  Plaintiff Lozansky sufficiently alleges a concrete and particularized injury for purposes of a motion to dismiss, but Plaintiffs concede that a declaratory judgment from this Court would not redress Lozansky's purported injuries.  Furthermore, Plaintiffs fail to identify a ministerial duty the Court could order the President to take, and thus fail to establish that a writ of mandamus could redress Lozansky's injury.  Finally, Lozansky's alleged injuries are outside the zone of interests of the Jackson-Vanik amendment, and Plaintiff Lozansky lacks prudential standing to pursue his claims.  Therefore, Defendant's [7] Motion to Dismiss is GRANTED.

An appropriate Order accompanies this Memorandum Opinion.


Date:   January 26, 2012

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge